THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| GARY M. TEETER, ) | Case No. 1:08CV00048 DS |
| Plaintiff, ) | |
| vs. ) | |
| ) | MEMORANDUM DECISION |
| LOFTHOUSE FOODS, ) | AND ORDER |
| Defendant. ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

This matter arises out of Defendant's termination of Plaintiff's employment allegedly after he was diagnosed with hepatitis C. Plaintiff complains that by terminating his employment, Defendant violated the Americans with Disabilities Act ("ADA").

Pursuant to Fed. R. Civ. P. 56, Defendant moves for summary judgment. As grounds for its Motion, Defendant asserts that "the undisputed facts show Lofthouse terminated Plaintiff for legitimate non-discriminatory reasons and Plaintiff has failed to establish that his hepatis C qualifies as a disability as that term is defined under the ADA." Mot. at 1. For the reasons that follow, Defendant's Motion for Summary Judgment is Granted.

## II. FACTUAL BACKGROUND

Defendant Lofthouse operates a bakery and manufacturing business for which Plaintiff Teeter began work in May of 2000 as a maintenance mechanic. On December 4, 2001, Plaintiff was given a Corrective Action for raising his voice with employees. On June 24, 2003, Plaintiff was given another Corrective Action for insubordination and failure to complete a work assignment. As a consequence, he was suspended for two days, demoted, and given a pay decrease. An email dated October 30, 2003, from Shawn Wykstra to Mike Ninichuck, complains generally about Plaintiff being slow to make repairs when needed and about his attitude with fellow employees. Plaintiff was terminated effective November 12, 2003, for insubordination and having a poor attitude.

Plaintiff disputes that corrective action was needed, or that he was not properly performing his job. At the time of Plaintiff's last disciplinary action on June 24, 2003, he was placed on "90 days probation with 30 days evaluations". Mem. Supp. at Ex. 3-C. Between June 24, 2003, and his termination on November 12, 2003, no one communicated to Plaintiff any issues regarding his work. During that same period, Plaintiff states that he received several commendations in the form of "Lofthouse rewards". There is no evidence as to what the purpose of the "Lofthouse rewards" is, or that those rewards are commendations for work performance. The June 24, 2003, Corrective Action stated in writing that if the

cited violation was not corrected, the result would be Plaintiff's discharge from employment with Lofthouse. *Id*.

Plaintiff was diagnosed with hepatitis in 1971-71. In the spring of 2003, he was preliminarily diagnosed with hepatitis C. That diagnosis was confirmed on September 22, 2003. Plaintiff began Interferon treatments on September 24, 2003, and continued the treatments until approximately August of 2004. Plaintiff does not currently see a physician for his hepatitis C. Shortly after his diagnosis was confirmed, Plaintiff informed his direct supervisor, Evan Nazale, that he had hepatitis C and that his doctor indicated he would be tired, irritable and depressed. Plaintiff informed Mr. Nazale that he "might need" some accommodation later. Teeter Dep. 45. Plaintiff never believed he needed any type of accommodation, nor did he request from Lofthouse any type of accommodation for his hepatitis C. Although Plaintiff was at times tired because of his Interferon treatments, he did not miss any work at Lofthouse or have any physical limitations that interfered with his ability to work due to his Interferon treatments. Mr. Nazale was not involved in the decision to terminate Plaintiff.

On September 24, 2003, Plaintiff filled his first prescription for Interferon treatments for hepatitis C. On November 12, 2003, he was informed of his termination. Plaintiff's health benefits were terminated effective November 11, 2003. Plaintiff was

3

suspicious that he was being terminated just as he was having his second Interferon prescription filled. Plaintiff alleges in his Amended Complaint that he was discriminated against because he suffered from hepatitis C.

Defendant's Human Resource Manager, Mark Stoner, states that before terminating Mr. Teeter "for insubordination and having a poor attitude", he reviewed Plaintiff's history of corrective actions and complaints and "listened to his supervisors explain Teeter's behavioral problems which included aggressive and abusive behavior towards co-employees". Stoner Aff. ¶¶ 5-7. Mr. Stoner further states that prior to Plaintiff's termination, he had no knowledge of Plaintiff's Hepatitis C or the cost of any treatment, nor did he have any discussions with Plaintiff's supervisors regarding his illness or the cost of his treatment. *Id*. at ¶¶ 7-8 In addition to Mr. Stoner, Plaintiff believes that Mike Ninichuck and Tony Sabitino were involved in the decision to terminate him. Plaintiff is unaware whether either of those individuals had any knowledge of his hepatitis C or his course of treatment.

After his termination from Lofthouse in November 2003, Plaintiff was unemployed until May 2004. He has been steadily employed since that time.

### III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish

there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1] *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden has two distinct components: an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for his motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support

---

[1] Whether a fact is material is determined by looking to relevant substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

the nonmovant's case.[2]  *Id.*, 477 U.S. at  323, 106 S. Ct. at 2554, 91 L. Ed. 2d at 275.  "[T]here can be no issue as to any material fact . . . [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.

---

[2]In his dissent in *Celotex,* Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground the nonmoving party--who will bear the burden of persuasion at trial--has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient.  Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment.  Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.  This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence.  If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories and other exchanges between the parties that are in the record.  Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

477 U.S. at 323, 106 S. Ct. at 2557-58, 91 L. Ed. 2d at 279 (citations omitted).

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274.

> If the defendant in a run-of-the-mill civil case moves for summary judgment . . . based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . .

*Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Id*., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

In applying this standard, the Court must view the facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

## IV. DISCUSSION

**A. ADA Claim**

To prevail on his ADA claim, Mr. Teeter must establish the following elements of a prima facie case: (1) that he is a disabled person as defined by the ADA; (2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job he held; and, (3) that his employer discriminated against him because of his disability. *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000); *Hennagir v. Utah Dep't of Corrections*, 587 F.3d 1255, 1261 (10th Cir. 2009).

Because there is no direct evidence of discrimination, the Court employs the familiar *McDonnell Douglas* analytical framework.[3] *Mackenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

> In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual.

*Id.* (internal citations omitted).

---

[3] *See McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802-04 (1973).

8

Lofthouse asserts that Mr. Teeter cannot establish either the first (disability) or third (discrimination because of disability) elements of his prima facie case. Specifically, it urges that notwithstanding a diagnosis of hepatitis C, Plaintiff has failed to establish any substantial limitation of a major life activity, and that it terminated Plaintiff due to his attitude and insubordination, and not because of his disability.

Mr. Teeter counters that the evidence supports his claim of a physical impairment that substantially limits a major life activity, and that Lofthouse regarded him as having such an impairment.[4] He also contends that a jury could find the reason Lofthouse gave for his termination pretextual.

**1. disability for purposes of the ADA**

Under the ADA, a disability is a term of art and is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The Court's analysis under subsection A of the definition has three steps. "First, the court must determine whether the plaintiff has an impairment. Second, the court must identify the life activity upon which the plaintiff relies and determine whether

---

[4]Plaintiff offers no evidence in support of his conclusory statement that Lofthouse regarded him as having an impairment.

it constitutes a major life activity under the ADA. Third, the court asks whether the impairment substantially limited the major life activity."[5] *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492,495 (10th Cir. 2000)(internal citations omitted). "[I]n proper circumstances a court may decide this [the third] step on a motion for summary judgment." *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 n.5 (10th Cir. 2003)(citing *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1161 n.5. (10th Cir. 2002)("our clarification today that this third step is factual and reserved for the jury does not preclude a court from deciding it in the appropriate circumstance, e.g. upon a motion for summary judgment (Rule 56) or judgment as a matter of law (Rule 50)").

Addressing the first step under subsection A, it is uncontroverted that Mr. Teeter has hepatitis C, a virus infecting his blood and which affects his hemic system. A physical impairment is defined as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: ... hemic...". 29 C.F.R. § 1630.2(h)(1).

Turning to the next step, Mr. Teeter has identified five life activities which he alleges have been limited by his impairment: (a)sex: (b)mental and memory functions; (c)social interactions;

---

[5]"Major life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working." *Doyal,* 213 F.3d at 495-96.

(d)sleep; and, (e)walking.  Walking and sleeping are major life activities.  *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000).  Thinking and interacting with others, for discussion purposes here, will be considered major life activities.  *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1157-58 (10th Cir. 2004)(assuming without deciding that thinking and interacting with others are major life activities).  Engaging in sexual relations is a major life activity.  *Bragdon v. Abbott*, 524 U.S. 624, 643 (1998)(procreation is a major life activity).

Lofthouse does not dispute that those activities qualify as major life activities under federal regulations and Tenth Circuit case law.  However, it disputes that Plaintiff was substantially limited in those activities so as to achieve disability status.

In order for an impairment to be substantially limiting, the individual must be

> (i)Unable to perform a major life activity that the average person in the general population can perform; or (ii)Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).  Several factors are considered in determining if a person is substantially limited in a major life activity: "(i)The nature and severity of the impairment; (ii)The duration or expected duration of the impairment; and (iii)The permanent or long term impact, or the expected permanent or long

11

term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The Court "also consider[s] the effects or corrective or mitigating measures, both positive and negative, on the impairment." *Doyal*, 213 F.3d at 496.

### a. life activities

#### (1) sexual relations

Mr. Teeter contends that his "sex life was negatively impacted because the fear of transmission of the disease caused his spouse to not want to be intimate with [him, and] the Interferon treatments cause erectile dysfunction." Mem. Opp'n at 9. The record reflects, however, that Mr. Teeter is still married, that his wife is aware of his hepatitis C, and that he continues to have sexual relations with his wife. And although Plaintiff claims to have suffered from erectile dysfunction, he believes that his erectile dysfunction was caused by Interferon treatments he received over a period of 48 weeks, but no longer takes. He also acknowledges that he may have had relations with his wife one or two times during the period of his treatment. Plaintiff has never sought a doctor's treatment for his condition and there is no evidence that he currently has any sexual limitation that can be attributed to hepatitis C. The Court concludes therefore that the record does not support Plaintiff's claim that he is substantially limited as to the major life function of sexual relations as claimed.

### (2) mental and memory functions

Mr. Teeter states that "[f]atigue caused by the Hepatitis caused [him] to loose mental and memory functions and also caused him to be irritable." Mem. Opp'n at 9. Yet he cites no examples of how he has been negatively impacted. The record is that he has been employed successfully for some years. Even if Mr. Teeter experienced some side effects while undergoing temporary Interferon treatment, the Court agrees with Lofthouse that there is no evidence to suggest that these life activities are substantially limited.

### (3) social interaction

Mr. Teeter contends that "[w]hen people found out about [his] illness they curtailed their social interactions with him." *Id*. Nevertheless, he can cite no specific incident while employed at Lofthouse or otherwise, where people were fearful of being close to him because of his hepatitis C. Other than a vague suggestion that he sees two of his friends less frequently now than before his diagnosis, Mr. Teeter offers no evidence to support his claim. His testimony is that he still sees his two friends and neither one has expressed concern about being around him due to his hepatitis C. And although he contends that sexual relations with his wife were negatively impacted, as discussed above, he continues to engage in sexual relations with his spouse. The Court finds that Plaintiff

13

has failed to establish that he is substantially limited in this life activity.

### (4) sleeping

Regarding this function, Mr. Teeter states that "[i]nsomnia and cramping inhibited [his] ability to sleep." *Id*. There is evidence to suggest that Plaintiff's sleep may have been affected during the period of his Interferon treatments. However, he has not been diagnosed with insomnia and he did not feel it was serious enough to consult a doctor. Plaintiff takes Excedrine PM once or twice a week to help him sleep. Even on nights when he doesn't take Excedrine PM, he is able to sleep "most of the time". Teeter Dep. 31. Based on the evidence presented, Mr. Teeter has not established that his sleep issues are sufficiently severe so as to be substantially limiting.

### (5) walking

Finally Mr. Teeter states that "fatigue limited the distance that he could walk". *Id*. While at Lofthouse, he was not limited in his ability to walk. He states only that while working at West Side Landscaping, a subsequent employer for which he repaired irrigation sprinklers, he would need to sit in the shade and rest after walking quite a bit. Teeter Dep. 48. Based on the evidence submitted, Mr. Teeter simply has not presented a triable issue that he is substantially limited in this life activity due to his hepatitis C.

14

In summary, the Court agrees with Lofthouse that Mr. Teeter has failed to set forth sufficient facts to place in dispute that he is substantially limited in any of his identified life activities so as to be disabled for purposes of the ADA. He has offered no medical records or affidavits to support his allegations and he has failed to address the transitory nature of his conditions. At most, he alleges that his life activities have been impacted, not substantially limited.

2. **Discrimination Based on Disability**.

Defendant also asserts that Plaintiff cannot satisfy the third element of a prima facie case, that he was discriminated against because of his disability. Mr. Teeter contends that "shortly after [he] informed his direct supervisor that he suffered from Hepatitis C, and shortly after the Plaintiff filled his first prescription for his Interferon treatment, the Defendant terminated him. This [he contends] is sufficient for a jury to infer that the Defendant terminated the Plaintiff because of his disability." Mem Opp'n at 16.

The Court disagrees. Plaintiff states that Mike Ninichuck, Tony Sabitino and Mark Stoner were the individuals involved in the decision to terminate him. Yet he acknowledges that he is unaware whether any of those individuals had knowledge about his hepatitis C or his course of treatment. Mr. Teeter has failed to controvert Mark Stoner's affidavit wherein he states: "As the Human Resource

15

Manager, I was involved in the decision to terminate Teeter.... I decided to terminate Teeter based on legitimate non-discriminatory reasons. Specifically, he was terminated for insubordination and having a poor attitude as reflected in the attached corrective actions and terminations notice". Stoner Aff. ¶¶ 4-5. Mr. Stoner further states: "[A]t the time of the corrective actions and termination, I had (and still have) no knowledge concerning the alleged cost of Teeter's Hepatitis C medication. In fact, at no time prior to Teeter's termination did I have any knowledge concerning his alleged Hepatitis C." Id. at ¶7. He also states that "[i]n my discussions with Teeter's supervisors prior to his termination, there was never any discussion regarding Teeter's Hepatitis C or the cost of any alleged prescription for Hepatitis C." *Id*. ¶8.

In short, there is no evidence or suggestion that anyone responsible for the decision to terminate Plaintiff had any knowledge of his hepatitis C or his course of treatment. There is a record of disciplinary action taken against Plaintiff prior to his Hepatitis C diagnosis. Plaintiff admits that he received verbal warnings and written communications regarding the inadequacy of his work. The timing of the termination of Plaintiff's health benefits and his notice of termination, without more, does not support a conclusion that he was discriminated against.

### 3. Legitimate non-discriminatory reason

Even if the Court assumes arguendo that Mr. Teeter has set forth a prima facie case, Lofthouse has offered a legitimate non-discriminatory reason for terminating him. As discussed, the record contains documentary evidence of disciplinary action against Plaintiff regarding his work performance, insubordination and attitude prior to, as well as after, his diagnosis of hepatitis C. And there is no evidence that anyone responsible for the decision to terminate Plaintiff, had any knowledge of his medical condition or treatment regimen.

### 4. Pretext

Having provided a legitimate non-discriminatory reason for terminating Mr. Teeter, the burden shifts to him to demonstrate that the proffered reasons of Lofthouse were merely a pretext for discrimination. *MacKenzie,* 414 F. 3d at 1274. Plaintiff contends that a jury could infer pretext from the following events surrounding his termination. He received several commendations for his work in the months prior to his termination. He was not informed of any problems with his work performance in the months prior to his termination. When asked by Plaintiff, Defendant refused to provide any real explanation as to why he was being terminated. And Lofthouse terminated his health benefits before Plaintiff was actually terminated.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotation marks and citation omitted). However, "'conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Id*. (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

The Court concludes that Mr. Teeter has failed to establish any pretext for his termination. After examining the record evidence, his cited contentions ring hollow. As to receiving commendations for his work, there is no evidence as to the purpose of the "Lofthouse rewards" or that those rewards are commendations for work performance. Although it may be that Plaintiff was not informed of problems with his work in the months prior to his termination, he was clearly on notice from the June 24, 2003 Corrective Action that if the violations cited were not corrected, the result would be his discharge from employment with Lofthouse. There is documentary evidence that in October of 2003, complaints were still being raised about Plaintiff's work and attitude. The fact that Plaintiff's medical insurance was cancelled a day or two

18

before he had notice of his termination is of little avail. Although Plaintiff did not receive his Termination Notice until November 12, 2003, the notice was prepared on November 7, 2003. Consistent with his termination effective November 12, 2003, his health insurance was cancelled effective November 11. 2003. Contrary to Plaintiff's claim, his Termination Notice states the reason for his termination. And although Mr. Teeter filled his first prescription for Interferon treatments on September 24, 2003, there is nothing to suggest that anyone at Lofthouse had knowledge of that event, or that it would have been of any concern had they known. In short, there simply is no viable evidence from which a jury could reasonably infer that Plaintiff's illness and treatment were factors in the decision of Lofthouse to terminate his employment.

**V. CONCLUSION**

For the foregoing reasons, Defendant Lofthouse's Motion for Summary Judgment (Doc. #33) is Granted. The Clerk of Court is requested to enter final judgment for Defendant.

IT IS SO ORDERED.

DATED this 11th day of February, 2010.

BY THE COURT:

*[signature]*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT